**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AMIR HAKIM MCCAIN, | ) | |
| (also known as JOHN MCCAIN) | ) | |
|     Plaintiff | ) | |
| | ) | |
| vs. | ) | C.A.No. 15-79ERIE |
| | ) | |
| JOHN WETZEL, et al, | ) | Magistrate Judge Baxter |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

**A. Relevant Procedural History**

Plaintiff, acting pro se, originally filed this case on March 13, 2015. As of September 1, 2017, this Court granted Defendants' motion to sever and directed that the only remaining claims in this action were contained within the Second Amended Complaint [ECF No. 72] at paragraphs 11 through 26 and were against Defendants Reynolds, Dittman, Oberlander and Overmyer. See ECF No. 79.

In the Second Amended Complaint, Plaintiff alleges that on March 1, 2014, he became ill after eating contaminated food from the prison cafeteria. Plaintiff claims that the green pepper and meat sauce was contaminated with human feces. Plaintiff alleges that this contamination was caused by a white inmate. Plaintiff alleges that Reynolds was told about the contamination but refused to have the bin of food removed and the kettle sanitized before serving food.

Plaintiff claims that on April 11, 2014, he met with Defendant Dittman and the inmate "blood and body crew" who explained that they could not sanitize the equipment with the chemicals on hand.

1

Plaintiff then filed Grievance 501189 regarding the incident. Defendant Oberlander investigated the incident and concluded that: the incident involved a bin of cut peppers that were to be used for the preparation of food for the evening meal; Defendant Reynolds contacted Defendant Dittman to inform him of the incident on the afternoon it occurred; the contaminated food was disposed of and the area and equipment sanitized. Plaintiff also claims that Overmyer covered up a false report by Oberlander.

In response to the severed Second Amended Complaint, those named Defendants filed a motion to dismiss [ECF No. 84] arguing that the case should be dismissed on purely legal grounds. As the basis for the motion to dismiss, Defendants argue: 1) that Plaintiff's claims against Oberlander and Overmyer fail as a matter of law because these Defendants were not personally involved in the incident; 2) Plaintiff fails to state an Eighth Amendment claim upon these facts.[1] Plaintiff has filed a Response and Brief in Opposition, as well as a Proposed Amended Complaint. ECF No. 114; ECF No. 115; ECF No. 116.

The dispositive motion is fully briefed and is ripe for disposition by this Court.

### B. Standards of Review

#### 1) *Pro se* Litigants

---

[1] In response to the motion to dismiss, Plaintiff originally filed a motion for certification [ECF No. 105] and a motion to compel production of documents [ECF No. 106]. In the motion for certification [ECF No. 105] and motion to compel [ECF No. 106], Plaintiff sought 1) a telephone conference; 2) the mandatory attendance of Defendants' insurance providers at the telephone conference; 3) production of documents and inspection of a video; 4) inmate Isenhart's first name and current address; 5) security officer's names; 6) monetary sanctions in the amount of $20,000 if Defendants have destroyed the video of Isenhart placing feces in the sauce. ECF No. 105. These motions were denied as they were duplicative of earlier motions filed by Plaintiff and because these requests for discovery were premature in the face of the motion to dismiss on purely legal grounds. See ECF No. 113.

In reviewing a *pro se* plaintiff's complaint, the court must accept all factual allegations in the complaint as true and take them in the light most favorable to the *pro se* plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93 (2007); Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (internal citation omitted). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) citing Papasan v. Allain, 478 U.S. 265, 286 (1986). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520-521 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a §1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (internal quotation omitted). See also Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the

Constitution."). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.

### 2) Motion to dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

The Third Circuit has expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C. Lack of Personal Involvement

The Commonwealth argues that Defendants Overmyer and Oberlander should be dismissed from this action because Plaintiff has failed to allege facts sufficient to support their personal involvement in any alleged constitutional violation. This Court agrees.

To establish a § 1983 claim, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995); Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct.21, 2013) citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v.

Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed.App'x 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." Chinchello, 805 F.2d at 133; Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990) cert. denied, 501 U.S. 1218 (1991). Section 1983 liability cannot be predicated solely on the theory of *respondeat superior.* Rizzo v. Goode, 423 U.S. 362 (1976). See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's actions); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-95 (3d Cir. 1997) (holding that § 1983 plaintiff is required to show that supervisor personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

In the context of a defendant who is alleged to have performed in a supervisory role, courts have identified two general instances in which either the conduct of that supervisor-defendant or the policies/procedures of that supervisor-defendant may amount to personal involvement and thereby warrant a finding of individual, supervisory liability for a constitutional tort: First, supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. A.M. ex rel. J.M.K. v. Luzerne

Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). Second, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." Id. quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989).[2]

Here, Plaintiff alleges that Overmyer and Oberlander acted after the initial food contamination incident, during an investigation. Plaintiff's allegations against these Defendants, even viewed in the light most favorable to Plaintiff, fail to state a claim under either theory of supervisory liability. Moreover, the denial of Plaintiff's grievances and/or misconducts does not, in itself, satisfy the requisite "personal involvement" requirement. Mincy v. Chmielsewski, 508 Fed.App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); Rogers v. United States, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that

---

[2] In this second type of supervisory liability, a plaintiff must show four elements: 1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; 2) the defendant-supervisor was aware that the policy created an unreasonable risk; 3) the defendant-supervisor was indifferent to that risk; and 4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989).

7

official.").³ Accordingly, the motion to dismiss should be granted as to Defendants Overmyer and Oberlander.⁴

### D. Humane Conditions of Confinement

Defendants move to dismiss the claims against Reynolds and Dittman based on Plaintiff's failure to state an Eighth Amendment claim on these facts.

Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825 (1991). But, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 Fed. App'x 167, 171 (3d Cir. 2007). Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities." Id. quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990). In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measure to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984). However, "to the extent that

---

³ Moreover, any allegations that these Defendants acted together are not sufficient as a matter of law to state a civil conspiracy claim under § 1983. See Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 185 (3d Cir. 2009) ("[A]llegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."); Langella v. Cercone, 2010 WL 2402971, at * 3 (W.D. Pa. June 10, 2010) ("In order to state a cause of action for civil conspiracy under § 1983, a plaintiff must plead both the elements of cause of action under § 1983 and conspiracy.").

⁴ None of the factual allegations of the proposed Third Amended Complaint save these Defendants from dismissal on this same basis.

prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To make out an Eighth Amendment claim based on prison conditions, the plaintiff must show "he has suffered an objectively, sufficiently serious injury [or deprivation], and that prison officials inflicted the injury with deliberate indifference." Farmer, 511 U.S. at 834. An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, water, shelter. Rhodes, 452 U.S. at 347; see also Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 419 (3d Cir. 2000).

The first prong of the Farmer test is an objective one: Plaintiff must demonstrate that he has been incarcerated under conditions posing a substantial risk of serious harm. 511 U.S. at 834. The second prong of the Farmer test is a subjective one, requiring plaintiff to demonstrate that defendants acted with deliberate indifference. To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Id. at 837. Thus, "deliberate indifference describes a state of mind more blameworthy than negligence," and requires "more than ordinary lack of due care for prisoner's interests or safety." Id. at 835.

Here, Plaintiff's allegations regarding the food contamination incident on March 1, 2014, even if taken as true, are not sufficient to state an Eighth Amendment violation. Specifically, Plaintiff's only complaint is that the prison served him contaminated food for one meal on one particular day. A single instance of an irregularity in the prison food does not give rise to a sufficient level of serious deprivation of the minimal civilized measure of life's necessities. Rhodes, 452 U.S. at 347. See also Lindsey v. O'Connor, 327 Fed. App'x 319, 321 (3d Cir. 2009)

9

("The purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation.") (citation omitted); Thomas v. SCI-Graterford, 2014 WL 550555, at *4 (E.D. Pa. Feb. 12, 2014) (single instance of mouse feces in food found insufficient); Murray v. Allen, 2010 WL 4159261 (E.D. Pa. Oct. 21, 2010) (single instance of human tooth found in prison meal was insufficient to establish Eighth Amendment claim); Allen v. Maryland, 2010 WL 727753, at *1 (D.Md. Feb. 25, 2010) ("To state a constitutional violation for unsanitary food preparation, an inmate must do more than allege a single or isolated incident of contamination.").

Accordingly, the motion to dismiss will be granted with regard to Plaintiff's Eighth Amendment claim against Reynolds and Dittman.[5]

### E. Racial Discrimination

Although race is only referenced in passing in the Second Amended Complaint (ECF No. 72, ¶ 12), in his opposition brief, Plaintiff clarifies that he believes the food contamination incident was racially motivated because the inmate who put feces into the food and Reynolds are white and that the majority of the inmate population who would have eaten the contaminated

---

[5] In his proposed Third Amended Complaint, Plaintiff alleges that the incident at issue here was not an isolated incident because there was an earlier incident of food contamination by an inmate who ejaculated into the food and a staff member watched as the contaminated food was served to others. ECF No. 116, page 2. Even assuming Plaintiff's allegations are correct, these two instances of food contamination fall far short of the level of deprivation required to establish an Eighth Amendment violation. Plaintiff's allegations do not constitute a substantial deprivation as a matter of law. "[O]nly a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim." Lindsey v. O'Connor, 327 Fed.Appx. 319, 321 (3d Cir. 2009). "[T]he Eighth Amendment's prohibition against cruel and unusual punishment is implicated" when prison officials systematically "den[y] a series of meals to an inmate over a span of weeks." Rodriguez v. Wetzel, 2015 WL 1033842 at *11 (3d Cir. 2015).

food are African-American.[6] To the extent that any of Plaintiff's statements can be liberally construed as attempting to bring a claim of racial discrimination, any such claim fails as a matter of law.

Racial discrimination claims are properly brought under the Equal Protection Clause of the Fourteenth Amendment, not the Eighth Amendment. The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It guarantees fairness and equality in the treatment of individuals by government officials. See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–66, 97 (1977). The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race. See id.; McLaughlin v. Florida, 379 U.S. 184, 192 (1964). To assert a protected-class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently. See Oliveira v. Twp. of Irvington, 41 Fed.Appx. 555, 559 (3d Cir. 2005) (observing that a prima facie case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"). A plaintiff "must prove the existence of purposeful discrimination" by the defendants. Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992).

---

[6] Additionally, in his proposed Third Amended Complaint, Plaintiff alleges that "the Defendants has [sic] violated Plaintiff's Eighth Amendment rights relating to discrimination protecting [Inmate] Isenhart and Reynolds that are 'caucasicans' [sic] exercising their 'racist' behavior against all African Americans." ECF No. 116, page 1.

None of Plaintiff's factual allegations are sufficient to indicate that any Defendant or other prison staff treated people differently based upon their race.

### F. Futility of Amendment

In opposition to the present motion to dismiss, Plaintiff has submitted a proposed Third Amended Complaint which expands on several allegations of the severed Second Addend Complaint and seeks to add two additional Defendants.

Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave [to amend] when justice so requires." Id. "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Many of Plaintiff's expanded factual allegations are futile, as discussed herein. See Footnotes 4-6. Moreover, Plaintiff's attempt to name two additional Defendants at this late date, more than three years after the filing of the original complaint, are prejudicial to Defendants. Plaintiff does not explain his delay or his repeated failure to name them in his previous amendments.

An appropriate Order follows.